**[ORAL ARGUMENT NOT SCHEDULED]**
**No. 22-5240**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

―――――――――

KABONI SAVAGE,

Plaintiff-Appellant,

v.

UNITED STATES DEPARTMENT OF JUSTICE, et al.,

Defendants-Appellees.

―――――――――

On Appeal from the United States District Court
for the District of Columbia

―――――――――

**BRIEF FOR APPELLEES**

―――――――――

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
  *Attorney General*

BARBARA HERWIG
JAYNIE LILLEY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7321*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3542*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A.    Parties and Amici

Appellant is Kaboni Savage, who was the plaintiff in the district court.  Appellees are: (a) United Sates Department of Justice; (b) Merrick B. Garland, in his official capacity as the Attorney General of the United States; (c) Ashley Dugger, in her official capacity as the Acting Director of the Office of Enforcement Operations; and (d) Jennifer A.H. Hodge, in her official capacity as Deputy Assistant Attorney General. Each appellee was named as a defendant in the district court.

There was no amicus curiae.

### B.    Rulings Under Review

At issue in this appeal is the Judge Colleen Kollar-Kotelly's July 28, 2022 Order and Memorandum Opinion, granting defendants' motion to dismiss or for summary judgment and dismissing the case without prejudice.

**C.    Related Cases**

This case has not previously been before this Court.  Counsel is

not aware of any other related cases within the meaning of Circuit Rule

28(a)(1)(C).

> */s/ Jaynie Lilley*
> Line Attorney

# TABLE OF CONTENTS

**Page**

STATEMENT OF JURISDICTION .................................................................1

STATEMENT OF THE ISSUE .....................................................................1

PERTINENT STATUTES AND REGULATIONS ....................................1

STATEMENT OF THE CASE ....................................................................1

    A.    Statutory Background .....................................................................1

        1.    The Bureau of Prisons Administrative Remedy
            Program ..................................................................................2

        2.    Special Administrative Measures to Prevent Acts
            of Violence and Terrorism ...............................................3

    B.    Factual Background ........................................................................5

    C.    Prior Proceedings ...........................................................................8

SUMMARY OF ARGUMENT ..................................................................12

STANDARD OF REVIEW .......................................................................14

ARGUMENT ...............................................................................................14

The District Court Correctly Dismissed the Complaint Because
Plaintiff Failed to Exhaust Administrative Remedies. ................14

    A.    The Bureau's administrative process was an available
        remedy that plaintiff was required to exhaust. ...................15

    B.    Plaintiff has not satisfied the exhaustion requirement. .......25

CONCLUSION ...........................................................................................28

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases:** <u>Page(s)</u>

*Booth v. Churner,*
    532 U.S. 731 (2001) ................................................................ 16, 22

*Grimes v. District of Columbia,*
    794 F.3d 83 (D.C. Cir. 2015) ................................................. 14

*Johnson v. Thyng,*
    369 F. App'x 144 (1st Cir. 2010) .......................................... 27

*Jones v. Bock,*
    549 U.S. 199 (2007) ...................................................... 2, 9, 23

*Kaemmerling v. Lappin,*
    553 F.3d 669 (D.C. Cir. 2008) ........................................ 16, 20

*Miller v. French,*
    530 U.S. 327 (2000) .............................................................. 14

*Owens v. Keeling,*
    461 F.3d 763 (6th Cir. 2006) ................................................ 27

*Porter v. Nussle,*
    534 U.S. 516 (2002) ...................................... 2, 9, 15, 22, 23

*Ross v. Blake,*
    578 U.S. 632 (2016) ...................................... 9, 15, 19, 20, 24

*Tsarnaev v. Garland,*
    No. 21-10, 2022 WL 2077949 (D. Colo. June 9, 2022) ..... 18

*United States v. Savage,*
    970 F.3d 217 (3d Cir. 2020) ................................................... 6

*Varner v. Shepard,*
    11 F.4th 1252 (11th Cir. 2021) ............................................. 17

*Woodford v. Ngo,*
    548 U.S. 81 (2006) ...................................................... 15, 16, 21

*Yousef v. Reno,*
    254 F.3d 1214 (10th Cir. 2001) ................................... 18, 24, 25

iv

**Statutes:**

18 U.S.C. § 3626(g)(2) ................................................................. 14

28 U.S.C. § 1331 ........................................................................ 1

28 U.S.C. § 1343 ........................................................................ 1

28 U.S.C. § 2201 ........................................................................ 1

28 U.S.C. § 2202 ........................................................................ 1

42 U.S.C. § 1997e ................................................................... 1, 2

42 U.S.C. § 1997e(a) ................................................................. 9

**Regulations:**

28 C.F.R. § 500.1(f) ................................................................. 26

28 C.F.R. § 501.3 ................................................................... 21

28 C.F.R. § 501.3(a) ......................................................... 3, 4, 25

28 C.F.R. § 501.3(b) ................................................................. 4

28 C.F.R. § 501.3(c) ................................................................. 5

28 C.F.R. § 501.3(d) ............................................................... 19

28 C.F.R. § 501.3(e) ................................................... 5, 21, 25, 26

28 C.F.R. pt. 542 ............................................................... 2, 19
  28 C.F.R. § 542.10(a) ............................................................ 2
  28 C.F.R. § 542.13 (a) .......................................................... 3
  28 C.F.R. § 542.14 .............................................................. 3
  28 C.F.R. § 542.15(a) ........................................................ 3, 26
  28 C.F.R. § 542.18 .............................................................. 3

**Rule:**

Fed. R. App. P. 4(a)(1)(B) ........................................................... 1

## STATEMENT OF JURISDICTION

Plaintiff invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1343, 2201, and 2202.  JA__ (Compl. ¶ 11).  The district court granted the government's motion to dismiss, or in the alternative, for summary judgment on July 28, 2022.  JA__ (Order); JA__ (Op.).  Plaintiff filed a timely notice of appeal on September 16, 2022.  JA__ (NOA); *see* Fed. R. App. P. 4(a)(1)(B).

## STATEMENT OF THE ISSUE

The question presented is whether the district court correctly concluded that plaintiff had failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e.

## PERTINENT STATUTES AND REGULATIONS

Pertinent statutes and regulations are reproduced in the addendum to this brief.

## STATEMENT OF THE CASE

### A.    Statutory Background

Congress enacted the Prison Litigation Reform Act to streamline litigation brought by prisoners in federal court and to reduce the number of frivolous lawsuits.  *See* 42 U.S.C. § 1997e.  The Act requires that "[n]o action shall be brought with respect to prison conditions . . .

by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* § 1997e(a). The exhaustion requirement "afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case," thereby preventing frivolous litigations that could be resolved at the institutional level. *Porter v. Nussle*, 534 U.S. 516, 525 (2002). Exhaustion also improves the quality of judicial review "by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007).

### 1. The Bureau of Prisons Administrative Remedy Program

Prisoners confined in a federal correctional facility may use the Bureau of Prisons Administrative Remedy Program, the grievance procedure established to raise issues concerning the conditions of their confinement. By regulation, the Bureau's administrative process "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). *See generally* 28 C.F.R. pt. 542. The Administrative Remedy Program consists of one informal level and three formal levels. With exceptions not relevant here, a federal inmate must first seek informal resolution

2

of the issue by prison staff. *Id.* § 542.13(a). If the inmate is dissatisfied

with the informal process, he can file a written Administrative Remedy

Request with the warden. *Id.* § 542.14. This is referred to as an initial

filing and is made on the appropriate form. *Id.* The warden has 20

days to respond in writing. *Id.* § 542.18. If the inmate is dissatisfied

with the warden's response, he has 20 days to file an appeal to the

Regional Director on the appropriate form. *Id.* § 542.15(a). The

Regional Director then has 30 days to respond in writing. *Id.* § 542.18.

If the inmate is dissatisfied with the Regional Director's response, he

may file an appeal with the General Counsel of the Bureau of Prisons

within 30 days. *Id.* § 542.15(a). The Bureau's response to this last level

of appeal is due within 40 days. *Id.* § 542.18.

### 2. Special Administrative Measures to Prevent Acts of Violence and Terrorism

Regulations authorize the Bureau of Prisons, upon direction of the

Attorney General, to authorize the warden of a federal prison to

implement Special Administrative Measures "that are reasonably

necessary to protect persons against the risk of death or serious bodily

injury." 28 C.F.R. § 501.3(a). Under the regulation, the Bureau's

Director may implement special procedures to prevent acts of violence

3

or terrorism where the Attorney General or, at his direction, either the head of a federal law enforcement agency or the head of a member agency of the United States intelligence community, provides written notification that there is a "substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons or [could result in] substantial damage to property that would entail the risk of death or serious bodily injury." *Id.*

These Special Administrative Measures may include housing an inmate in administrative detention and/or limiting certain privileges, including but not limited to correspondence, visits, interviews with news media representatives, and use of the telephone. 28 C.F.R. § 501.3(a). The regulations require the Bureau to give written notification of the imposition of any such measures and the basis for their issuance to an affected prisoner as soon as practicable. *Id.* § 501.3(b). Such measures may initially be imposed for a period of up to 120 days and may be extended thereafter by the Bureau's Director in increments of up to one year upon receipt of additional written notification from the Attorney General or, at his direction, from the

head of a federal law enforcement agency or member agency of the
United States intelligence community, that the circumstances identified
in the original notification continue to exist. *Id.* § 501.3(c).

An affected inmate may seek review of any restriction imposed
pursuant to the Special Administrative Measures through the Bureau
of Prison's Administrative Remedy Program. 28 C.F.R. § 501.3(e).

## B.    Factual Background

Plaintiff Savage is a federal inmate currently housed in the
Administrative Maximum Facility at the U.S. Penitentiary in Florence,
Colorado. JA__ (Op. 1). Plaintiff is confined subject to the terms of
Special Administrative Measures, which limit his communications with
persons within and outside the prison. These measures restrict his
communication to a list of pre-approved individuals, including his
counsel, and limit the amount of outside correspondence via telephone.
JA__ (Op. 2-3). The Special Administrative Measures also require the
monitoring of plaintiff's calls and visits and pre-screening of his mail.
JA__ (Op. 2-3).

The Special Administrative Measures were first imposed in 2007
when plaintiff was tried and convicted of committing several murders

and other crimes, including crimes orchestrated while he was detained. *See generally United States v. Savage*, 970 F.3d 217 (3d Cir. 2020). Specifically, plaintiff was convicted of orchestrating the firebombing of the home of a cooperating witness in his pending criminal case, resulting in the murders of six people. *Id.* at 234-35. Plaintiff solicited these homicides from prison through telephone calls and messages through friends and family members. *Id.* He was convicted in 2013 and received a capital sentence. *Id.* at 236.

Plaintiff has been incarcerated since 2004. During his time in custody, plaintiff has used the Bureau's administrative remedial scheme 60 times. JA__ (Op. 3). In particular, in 2019 and 2020, he sought modifications to the Special Administrative Measures through the Bureau's administrative process and received modifications to add his imam and an educational institution to his approved contacts. JA__ (Op. 4-5). In accordance with regulations, the Special Administrative Measures have been renewed annually by the Department of Justice, and the annual renewals stated that "[r]equests for additional non-legal contacts may be submitted and will be considered on a case-by-case basis." JA__ n.6 (2021 SAM Extension Mem. at 9 n.6).

6

In 2021, plaintiff submitted a request for additional social contacts to the Bureau of Prisons through the Administrative Remedy Program. His request stated generally that he would like more social contacts but failed to provide any details about specific individuals, including the names, contact information, or basis for his relationship with the requested contacts. *See* JA__ (Op. 5); *see also* JA__ (Marc. 2021 Administrative Remedy Program Request). The Warden responded to the request, noting that plaintiff was required to use a contact request form for a modification of Special Administrative Measures which would allow for the Bureau of Prisons to coordinate with the FBI and the U.S. Attorney's Office involved in plaintiff's criminal prosecution. *See* JA__ (Response to Mar. 2021 Administrative Remedy Program Request). The Warden's response also noted that plaintiff could appeal the response through the administrative scheme. Plaintiff did not file a contact request form or seek review of the Warden's response to his request. JA__ (Op. 5-6).

Plaintiff's counsel in his capital case has also regularly submitted letter correspondence to Department of Justice officials, including those in the U.S. Attorney's Office involved in his criminal conviction,

7

requesting modification of the Special Administrative Measures in advance of the annual renewal of the measures.  JA__ (Op. 3-4).  The U.S. Attorney's Office has forwarded those letters to the Department of Justice officials involved in the decision about annual renewal of his Special Administrative Measures.  JA__ (Op. 3-4).  His capital counsel alleged that he had "been led to believe such requests were the appropriate way to present requests to add social contacts, and that each year's renewed [Special Administrative Measures] reflected the [d]efendants' summary rejection of them."  JA__ (Op. 4) (cleaned up). Plaintiff did not file suit after the renewals.

## C.   Prior Proceedings

In April 2021, plaintiff filed suit against the U.S. Department of Justice and several departmental officials to challenge the Special Administrative Measures imposed upon him.  JA__ (Compl.).  He sought an injunction "requiring Defendants to grant [his] requests to expand his SAMs contact list" to include certain individuals or, alternatively, to "require that Defendants revisit Mr. Savage's request to expand his contact list."  JA__ (Compl. ¶ 5).

The district court granted summary judgment to defendants, holding that plaintiff had failed to exhaust administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a). JA__ (Op. 16). The court observed that the exhaustion requirement "'afford[s] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,'" thereby preventing frivolous litigations that could be resolved at the institutional level." JA__ (Op. 8) (quoting *Porter*, 534 U.S. at 525). The court further explained that the requirement that an inmate exhaust all available remedies before bringing suit "improves litigation 'by leading to the preparation of a useful record.'" JA__ (Op. 8) (quoting *Jones*, 549 U.S. at 219). The court reasoned that an inmate is required to exhaust all remedies that are "available," in the sense that the administrative remedy must offer the possibility for some relief, be capable of use for the accomplishment of a purpose, and be accessible. JA__ (Op. 9). The court admonished that even "[i]f a remedy process is 'susceptible to multiple reasonable interpretations,'" the inmate "'should err on the side of exhaustion.'" JA__ (Op. 9) (quoting *Ross v. Blake*, 578 U.S. 632, 644 (2016)).

9

The court first held that the Administrative Remedy Program was an available remedy for plaintiff's request to modify his Special Administrative Measures.  The court concluded that the administrative process was not opaque or unusable, that Bureau officials had not prevented plaintiff from using the process, and that Bureau officials were not unable or unwilling to grant plaintiff relief.  *See* JA__ (Op. 11-12).  Rather than finding the scheme burdensome or opaque, the court pointed out that plaintiff had used the Administrative Remedy Program 60 times.  JA__ (Op. 11).  The court observed that plaintiff had used the administrative scheme to successfully seek modifications to the Special Administrative Measures to take an educational course and communicate with a religious leader.  JA__ (Op. 11).  And the court concluded that Bureau of Prisons officials did not refuse to consider his request.  Rather, the Warden responded to his 2021 request appropriately and explained the steps plaintiff needed to take to have his request for additional contacts evaluated.  JA__ (Op. 11).  The district court concluded that the Bureau's administrative process "offers some relief to an inmate challenging" the Special Administrative

10

Measures and thus was an available remedy that plaintiff was required to exhaust.  JA__ (Op. 11).

The court further rejected plaintiff's contention that the Bureau of Prisons' lack of authority to unilaterally grant or deny his request for additional social communications meant that the Bureau's administrative scheme was not an available remedy.  The court explained that, like with his other successful requests for modifications, the Bureau of Prisons officials have a role in "enabl[ing] the addition of social contacts as they evaluate logistical requests, share information, and facilitate approval."  JA__ (Op. 12).  "Although the [administrative scheme] is not a one-stop-shop to resolve" plaintiff's requests to modify his Special Administrative Measures, the district court concluded "it is far from a 'dead end.'"  JA__ (Op. 12).

Second, the court held that plaintiff had not offered a compelling reason to bypass the administrative scheme.  The court rejected plaintiff's contention that the applicable regulations allow but do not require him to appeal his 2021 request through the tiers of the administrative scheme.  "[T]he use of the word 'may' in § 501.3(e) does not render [the administrative] four-step process optional because,

11

under the [Prison Litigation Reform Act], all *available* remedies must be exhausted." JA__ (Op. 15). Moreover, prison officials did not prevent him from filing a grievance. JA__ (Op. 15). The court also set aside his contention that responses from the prosecuting U.S. Attorney's Office about his Special Administrative Measures led him to believe that direct correspondence with the Department of Justice was an appropriate method to request a change, noting that "inmates should not rely on their own contrary interpretation of the process to claim exhaustion." JA__ (Op. 15) (cleaned up). Indeed, the court pointed out that the responses from the Department of Justice to his correspondence did not establish whether the agency decided his request on the merits but that a properly exhausted claim would allow for the development of a record. JA__ (Op. 15-16).

The district court entered judgment for the defendants, dismissing the complaint. JA__ (Order).

## SUMMARY OF ARGUMENT

Plaintiff, an inmate subject to Special Administrative Measures which restrict his communications while incarcerated to a preapproved list of contacts, filed suit seeking to expand his contacts. The district

court correctly dismissed plaintiff's complaint because he failed to exhaust his claims under the Bureau of Prisons Administrative Remedy Program, an administrative scheme he had utilized multiple times to successfully seek other modifications to the Special Administrative Measures.  The Prison Litigation Reform Act requires an inmate to exhaust all available administrative remedies before filing suit, and the Bureau's administrative scheme was an available remedy through which he could properly seek modification of those restrictions.

Plaintiff's arguments that the scheme was not available to him fail.  His primary argument is that the Bureau of Prisons cannot unilaterally accept or reject his request for modification of Special Administrative Measures because the Bureau coordinates with other components, and officials at the Department of Justice often wield the final decision-making authority on whether to permit additional social contacts.  Even if plaintiff accurately characterized the Bureau's role, that would not render the Bureau's administrative scheme a dead end or otherwise unavailable within the meaning of the Act, where the Bureau's administrative process can provide plaintiff relief.  Moreover, plaintiff's request to side-step the Bureau with direct appeals to those

13

in the Department of Justice he believes are the exclusive decision-makers would undermine the Bureau's administrative scheme and the purposes of the exhaustion requirement.

Plaintiff has not properly exhausted the available administrative remedies, and the district court correctly dismissed his complaint.

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's grant of a motion for summary judgment." *Grimes v. District of Columbia*, 794 F.3d 83, 88-89 (D.C. Cir. 2015).

## ARGUMENT

**The District Court Correctly Dismissed the Complaint Because Plaintiff Failed to Exhaust Administrative Remedies.**

The Prison Litigation Reform Act creates a carefully reticulated scheme for "the entry and termination of prospective relief in civil actions challenging prison conditions." *Miller v. French*, 530 U.S. 327, 331 (2000). The statute applies to "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison." 18 U.S.C. § 3626(g)(2). The Supreme Court has made clear that prisoners must exhaust inmate grievance procedures before

14

bringing a civil action and that the Act's exhaustion requirement applies to all inmate suits about "prison life, whether they involve general circumstances or particular episodes." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see also Woodford v. Ngo*, 548 U.S. 81, 88-89, 93-94 (2006) (Well-established administrative exhaustion requirement is a precondition to judicial review; the statute requires "proper exhaustion" of "such administrative remedies as are available."). This Court should affirm the district court's judgment because plaintiff has not exhausted the administrative remedies available to him.

### A.    The Bureau's administrative process was an available remedy that plaintiff was required to exhaust.

The district court correctly determined that the Bureau of Prisons Administrative Remedy Program was an available administrative remedy and, accordingly, that plaintiff was required to exhaust that process before filing suit.

1. The Prison Litigation Reform Act requires an inmate to exhaust all remedies that are "available." *Ross v. Blake*, 578 U.S. 632, 642 (2016). A remedy is available, within the meaning of the Act, if it offers the possibility of some relief, is capable of being used to accomplish its

15

purpose, and is accessible. *Booth v. Churner*, 532 U.S. 731, 737-38 (2001). An administrative process offers some relief even if the scheme "cannot grant the exact type of relief the inmate seeks or where the inmate believes pursuing the process would be futile because it is unlikely to resolve his complaint." *Kaemmerling v. Lappin*, 553 F.3d 669, 675-76 (D.C. Cir. 2008). When a process offers some sort of "responsive action" to the grievance, it is an available remedy. *Id.*; *see also Woodford*, 548 U.S. at 85 ("[A] prisoner must now exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process.").

The Bureau's Administrative Remedy Program is an available remedy for plaintiff's request for modification to the Special Administrative Measures because it is the mechanism through which changes to those measures can be made. As the district court explained, plaintiff has previously secured changes to those measures through the same administrative scheme, expanding his contacts list to include an imam and an educational institution. JA__ (Op. 11). Plaintiff submitted those requests through the Administrative Remedy Program to the Bureau of Prisons, which coordinated the information-

16

gathering and views of the relevant agency stakeholders, for final

approval by Department of Justice officials.  JA__ (Op. 11).

The Bureau's role in the decision-making process about a request

to change Special Administrative Measures cannot be discounted: the

Bureau implements the restrictions and can itself accommodate specific

requests relating to the restrictions.  Before a request can be considered

on the merits, the Bureau provides an important function in gathering

information from the inmate, including the necessary information to

evaluate the requested contacts as the Warden did for plaintiff's 2021

request.  JA__ (Op. 11).  Moreover, "filing a SAMS-related grievance

allows [the Bureau of Prisons] to more effectively communicate with

other agencies to ensure that the SAMS' intent is realized and provide

information as needed for the agencies to evaluate the request."  JA__

(Op. 12); *see also Varner v. Shepard*, 11 F.4th 1252, 1259 (11th Cir.

2021) (inmate grievance process that could involve forwarding a

complaint for further investigation offers the "possibility of some relief,"

even if limited).  The Bureau of Prisons can play an important role in

the ultimate decision whether to grant a request to modify Special

Administrative Measures by providing on-the-ground information,

17

including the feasibility of the implementation of any requested

modifications and monitoring the implementation of current measures,

and the Bureau retains discretion in how and when to implement the

measures.  *See Yousef v. Reno*, 254 F.3d 1214, 1220 (10th Cir. 2001)

(concluding that the Bureau's scheme is an available remedy for

challenging specific Special Administrative Measures because the

Bureau has discretionary power to reassess the Attorney General's

authorized restrictions and conditions that led to the restrictions);

*Tsarnaev v. Garland*, No. 21-10, 2022 WL 2077949, at *1 (D. Colo. June

9, 2022) (noting that inmates with Special Administrative Measures

have used the process to modify those restrictions and that the Bureau

has authority to alter the restrictions as they relate to issue of prison

management and conditions of confinement).

 An administrative remedy is considered unavailable if it "operates

as a simple dead end — with officers unable or consistently unwilling to

provide any relief to aggrieved inmates;" when the remedial scheme is

"so opaque that it becomes, practically speaking, incapable of use;" or

"when prison administrators thwart inmates from taking advantage of

a grievance process through machination, misrepresentation, or

18

intimidation." *Ross*, 578 U.S. at 643-44.  None of those factors are

applicable to the Bureau's administrative scheme's availability for

plaintiff's requests to expand his contracts list.  As plaintiff's prior,

successful experiences with using the scheme to expand his contacts list

make clear, the scheme is not a "dead end" but a path for obtaining the

necessary input from stakeholders and balancing the various interests

at stake.  Neither the regulations nor the scheme is "opaque."  Rather,

the regulations clearly require an inmate to use the Administrative

Remedy Program to request modification of Special Administrative

Measures.  *See* 28 C.F.R. § 501.3(d) ("The affected inmate may seek

review of any special restrictions imposed in accordance with paragraph

(a) of this section through the Administrative Remedy Program, 28 CFR

part 542.").  The administrative scheme itself is clear and is intended to

channel any grievance about "any aspect of [an inmate's] confinement."

*Id.* § 542.10(a).  *See generally id.* pt. 542.  Plaintiff's frequent prior uses

of the scheme to request changes to his contacts list as well as other

changes confirm that the scheme is not opaque.  And plaintiff has

presented no allegation or argument that Bureau officials prevent him

from accessing the scheme by misrepresentation or intimidation.  To the

19

contrary, the Warden responded to his March 2021 request by directing him to the correct form and process necessary for his particular request. JA__ (Op. 5); *cf. Ross*, 578 U.S. at 644 ("[I]nterference with an inmate's pursuit of relief renders the administrative process unavailable."). That plaintiff elected not to avail himself of the appropriate administrative scheme does not mean it was unavailable to him.

This Court's decision in *Kaemmerling*, 553 F. 3d at 674–75 demonstrates that the Bureau's scheme was an available remedy under the Act. The Court held that the administrative scheme could provide no relief to an inmate challenging a binding statutory command. *Id.* at 675 (considering a challenge to the statutory requirement that the Bureau of Prisons collect DNA samples from inmates). None of those circumstances are presented here. Plaintiff has not challenged a statutory requirement that prevents the agency from taking any action to address his grievance, nor are there any other circumstances that foreclose the Bureau's process from considering his request. *Cf. Ross*, 578 U.S. at 648 (remand to determine whether use of one administrative process "foreclosed" an alternative remedial scheme).

20

2.  The district court properly rejected plaintiff's argument that he should be allowed to bypass the Bureau of Prisons scheme and present his claim directly to Department of Justice officials involved in the final decision about any change to the Special Administrative Measures. JA__ (Op. 13-16).  His theory would undermine the Bureau of Prison's administrative scheme and thwart the purposes of the Act's exhaustion requirement.

By regulation, the Special Administrative Measures are implemented and administered by the Bureau of Prisons.  *See* 28 C.F.R. § 501.3 (setting out role of the Bureau and the Warden of the relevant facility).  Those regulations specifically state that an inmate's recourse for review of any special restrictions is through the Administrative Remedy Program.  *Id.* § 501.3(e).  Siphoning off one set of requests undermines the functioning of the Administrative Remedy Program, that is designed to be a single point of review for all inmate requests. *See Woodford*, 548 U.S. at 90-91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.").

21

His theory is inconsistent with the aims of the Prison Litigation Reform Act. As the district court explained, "[b]ypassing procedural rules would undermine the [Act's] intent to allow corrections officials the opportunity to resolve issues internally before launching into litigation." JA__ (Op. 13); *see also Porter,* 534 U.S. at 525. The exhaustion requirement aims to "reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524-25. Administrative processes can result in corrective action, like plaintiff's prior successful requests for modifications to the Special Administrative Measures, that obviates the need for litigation, and can help "filter out" other claims. *Id.* (quoting *Booth*, 532 U.S. at 737). Allowing one inmate to bypass the administrative procedures undermines the Act and the interests served by the exhaustion requirement.

That the Bureau of Prisons may not be the final or exclusive decision-making authority for plaintiff's request does not render the administrative process unavailable. *See* Opening Br. 1, 22 (describing Department of Justice officials as the "sole" or "exclusive" authority for modifications for the Special Administrative Measures). The Bureau's administrative process serves as the central point for resolving

22

grievance relating to an inmate's confinement. The coordination process involves the collection and exchange of information relevant to a request for a modification of Special Administrative Measures. The Bureau initiates and coordinates the process for vetting of additional contacts, a process which results in the compilation of an administrative record. *See Jones v. Bock*, 549 U.S. 199, 219 (2007) (Exhaustion of the administrative process improves litigation "by leading to the preparation of a useful record."); *see also Porter*, 534 U.S. at 525 (litigation "could be facilitated by an administrative record that clarifies the contours of the controversy"). As plaintiff's brief points out, his own direct requests to Department of Justice officials produced no "evidence" that his requested contacts were "vetted" or that the agency "assessed their individual risk." Opening Br. 5; JA__ (Op. 15) ("A properly submitted grievance would have established the specific information at issue and whether or not DOJ's denials were in fact 'on the merits.'"). Plaintiff's failure to pursue the appropriate administrative process deprives the court of a complete administrative record on which to review his complaint. *See* JA__ (Op. 16) ("Allowing inmates to bypass

the specified grievance procedure would complicate the review process and produce disorderly lawsuits without complete record.").

Plaintiff also errs in asserting that he was entitled to bypass the Administrative Remedy Program based upon his correspondence with the United States Attorney's Office in his criminal case.  Opening Br. 15 (describing the Department of Justice's renewal of his Special Administrative Measures as a final decision on requests sent to the United States Attorney's Office).  He cannot claim confusion about whether he was required to use the Bureau's administrative process in order to evade the exhaustion requirement.  As the Supreme Court has explained, when an administrative process is unclear or even "susceptible of multiple reasonable interpretations," then an inmate "should err on the side of exhaustion."  *Ross*, 578 U.S. at 644.

The Tenth Circuit rejected a similar argument in *Yousef*, 254 F. 3d at 1221-22.  In that case, the court of appeals held that an inmate's letter to the Attorney General and his informal and formal petitions to request changes to Special Administrative Measures did not themselves satisfy the exhaustion requirement or obviate the need to exhaust remaining administrative remedies.  That was true, even though the

24

Assistant Attorney General's response to the prisoner's informal

complaint failed to inform the prisoner of the appropriate

administrative process.  *Id.*

### B.     Plaintiff has not satisfied the exhaustion requirement.

It is undisputed that plaintiff submitted an administrative

grievance with the Warden but failed to appeal the Warden's response

or request a contact request form from the Bureau of Prisons, as the

Warden had instructed.  Accordingly, he has not exhausted the

available administrative remedies under the Act.

Plaintiff errs in asserting that correspondence from his counsel in

his underlying criminal case to the Department of Justice may

substitute for compliance with a multi-tiered administrative review

system administered by the Bureau.  Plaintiff's argument ignores the

provision in Bureau regulations authorizing prisoners subject to Special

Administrative Measures to "seek review of any special restrictions

imposed in accordance with paragraph (a) of this section [28 C.F.R. §

501.3(a)] through the Administrative Remedy Program, 28 CFR part

542."  28 C.F.R. § 501.3(e).

25

Plaintiff is incorrect to assert that the regulations permit him to craft his own avenue for administrative review of the Special Administrative Measures. Opening Br. 28 (arguing that regulations speak in permissive but not exclusive terms). As a textual matter, the regulations are best read to require an inmate to seek review of Special Administrative Measures through the Administrative Remedy Program. *See* 28 C.F.R. § 501.3(e) ("The affected inmate *may* seek review of any special restrictions imposed" through the Bureau's process." (emphasis added)). Under Bureau regulations, the use of "may" indicates the availability of the process, if the inmate should choose to challenge a restriction. *See* 28 C.F.R. § 500.1(f) ("'*May*' means a discretionary right, privilege, or power is conferred."). This usage is also consistent with the regulations providing for steps in the administrative review scheme that an inmate can pursue. *Compare id.* § 501.3(e), *with id.* § 542.15(a) ("An inmate who is not satisfied with the Warden's response *may* submit an Appeal on the appropriate form (BP–10) to the appropriate Regional Director. . . ."), *and id.* ("An inmate who is not satisfied with the Regional Director's response *may* submit an Appeal on the appropriate form (BP–11) to the General Counsel within 30 calendar

26

days. . . .").  Moreover, as the district court noted, "the use of the word 'may' in § 501.3(e) does not render the [Administrative Remedy Program's] four-step process optional because, under the [Act], all *available* remedies must be exhausted."  JA__ (Op. 15) (citing, *inter alia*, *Johnson v. Thyng*, 369 F. App'x 144, 147–48 (1st Cir. 2010) (rejecting the proposition that the word "may" makes a grievance procedure optional because all available remedies must be exhausted)); *see also Owens v. Keeling*, 461 F.3d 763, 770 n.4 (6th Cir. 2006) (concluding that permissive language was irrelevant to considering the exhaustion issue).

Finally, there is no basis for plaintiff's request for discovery into whether he complied with the exhaustion requirement.  Opening Br. 30-31.  Plaintiff has offered no reason for discovery or specific facts that he could develop in discovery to show that he properly exhausted his claims.

## CONCLUSION

For the foregoing reasons, the judgment of the district court should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
  *Principal Deputy Assistant*
    *Attorney General*

BARBARA HERWIG

  */s/ Jaynie Lilley*
JAYNIE LILLEY
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7321*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 514-3542*
  *jaynie.lilley2@usdoj.gov*

MARCH 2023

28

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 5,009 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Jaynie Lilley*
Jaynie Lilley