# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 13, 2023          Decided January 26, 2024

No. 22-5240

KABONI SAVAGE,
APPELLANT

v.

UNITED STATES DEPARTMENT OF JUSTICE, ET AL.,
APPELLEES

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:21-cv-01057)

———

*Joseph R. Hicks* argued the cause for appellant. With him on the briefs was *Christopher N. Moran*.

*Jaynie Lilley*, Attorney, U.S. Department of Justice, argued the cause for appellees. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, and *Barbara Herwig*, Attorney. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: KATSAS and RAO, *Circuit Judges*, and GINSBURG, *Senior Circuit Judge*.

2

GINSBURG, *Senior Circuit Judge*:

## I.    Introduction

The appellant in this case is a federal prisoner.  He sued the Justice Department, claiming the Department is imposing restrictions on his communications with his family and friends in violation of his rights under the First Amendment to the Constitution of the United States.  The appellant, however, never completed the Justice Department's Administrative Remedy Program for seeking relief from those restrictions. The district court concluded that the Prison Litigation Reform Act of 1996 (PLRA) barred his lawsuit and dismissed it.  We agree and affirm the judgment of the district court.

## II.    Background

Appellant Kaboni Savage is a federal prisoner on death row at the Bureau of Prisons' (BoP) U.S. Penitentiary, Administrative Maximum Facility in Florence, Colorado (ADX Florence).  Savage was already in federal prison in 2004 awaiting trial on drug trafficking charges when he committed some of the crimes that put him on death row.  More specifically, by making a telephone call from prison, he arranged the firebombing of the house of a cooperating witness in his case. The attack killed six members of the witness's family.  In 2013, Savage was convicted of 12 counts of murder in aid of racketeering, among other offenses, and was sentenced to death.  His execution has been pending since 2020, when the Third Circuit affirmed both his conviction and his death sentence.  *See United States v. Savage*, 970 F.3d 217, 234–36 (2020).

In 2007, the Justice Department imposed upon Savage certain "Special Administrative Measures" (SAMs) restricting his communications and housing pursuant to a Justice Department regulation applicable to a prisoner whose communications or

3

interpersonal contacts present "a substantial risk . . . [of] death or serious bodily injury."  The regulation provides that a SAM:

> may be implemented upon written notification to the Director, Bureau of Prisons, by the Attorney General or, at the Attorney General's direction, by the head of a federal law enforcement agency, . . . that there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons . . . .  [SAMs] ordinarily may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence . . . .

28 C.F.R. § 501.3(a).

The Justice Department may impose a SAM on a prisoner for up to one year.  *See id.* § (c).  It may renew the SAM as long as it finds a "substantial risk that the [prisoner's] communications or contacts with other persons could result in death or serious bodily injury to persons."  *Id.*

The SAM regulation provides that "[an] affected inmate may seek review of any [SAM] through the Administrative Remedy Program, 28 CFR part 542."  *Id.* § (e).  The ARP comprises:  (1) an informal complaint to the prisoner's correctional counselor or other prison staff member, *see* 28 C.F.R. § 542.13; (2) a formal Administrative Remedy Request directed to the

4

warden on form BP-229,<sup>*</sup> *see* § 542.14; (3) an appeal on form BP-230 to the appropriate BoP Regional Director, *see* § 542.15; and (4) a final appeal on form BP-231 to the BoP General Counsel, *see id.,* who responds after consulting with other elements of the Department of Justice.

The Justice Department has renewed Savage's SAMs annually since 2007, with occasional modifications. The SAMs currently prevent him from communicating with anyone outside the prison except his legal team and seven named family members, viz., his three adult children, the mother of one of his children, one of his sisters and her two adult children, a Muslim imam, and a college through which he is taking a correspondence course. For his approved family contacts, however, the SAMs limit Savage to a few pieces of paper correspondence per week and several 15-minute phone calls per month. His SAMs allow an FBI agent to screen his non-legal mail and to monitor all his non-legal calls and visits.

Savage wants to add more relatives and several friends to the list of his approved contacts. In January 2015, his defense attorney emailed the assistant U.S. attorney in charge of Savage's case to follow up on an earlier letter the attorney had sent asking for modifications to Savage's approved contacts list. Although Savage had not submitted the forms required by the ARP for requesting an additional contact, the Justice Department, when it shortly thereafter renewed Savage's SAMs, added to his contact list the aforementioned adult children of his sister. The AUSA replied to Savage's attorney that he could "assume that the newly enacted SAM is the Department's response to your letter." As recounted by the district court in this case, Savage's lawyer says he was thus "led

---

<sup>*</sup> The record indicates that "BP-229" and "BP-9" are different names for the same BoP form at different times. The same is true for "BP-230" and "BP-10" and for "BP-231" and "BP-11."

5

to believe such requests were the appropriate way to present requests to add social contacts [. . . ], and that [each] year's renewed SAMs [. . . ] reflected the [Government's] summary rejection of them."

Savage's attorney continued sending emails to the AUSA each year asking for further modifications to Savage's SAMs. The Justice Department did not respond to any further emails from Savage's counsel, nor did it make any of the modifications requested in this way.

Savage claims the Justice Department is violating his First Amendment rights by refusing to modify his SAMs to allow additional communications and contacts. In February 2021, Savage finally took the required first step in the ARP process, submitting to his Correctional Counselor an Informal Resolution Form complaining about his SAMs.

1. **State your complaint (single complaint or a reasonable number of closely related issues):** I haven't had anyone added to my (SAMs) contact list in approximately 10 years. I want to add more social contacts to my list. The FBI has denied adding contacts and now I have to exhaust the administrative remedies. The process to add and delete should be uniform. The agent on my case is a lying RAC-IST. My First Amendment rights are being violated.

   . . .

2. **State what resolution you expect:** I want more contacts (social). The average prisoner here has at least 30–35. There should be a pro-

6

cess to add and delete contacts and it shouldn't
take an arbitrary amount of time.

(Cleaned up handwritten original). The counselor responded
to Savage's request two weeks later, explaining, "You must
submit your contact requests through [Special Investigative
Services] and the overseeing agency of your SAM. If the de-
nial is from the overseeing agency, then this cannot be handled
at this level."

In March 2021, Savage submitted a Request for
Administrative Remedy to the warden of ADX Florence, the
second step in the ARP. His request reads:

> I haven't had a social contact added in approxi-
> mately 10 years. I want more social contacts
> added, but my U.S. attorney and agent refuse to
> abide by policy. They intentionally keep refus-
> ing/denying any contacts. I have to exhaust
> these remedies to file my suit to the courts. The
> process to add and/or delete contacts is an "ex-
> ercise in futility." My First Amendment rights
> are constantly being violated. I should be free
> to speak to and write all friends and family. It's
> racist and arbitrary/capricious.

(Cleaned up handwritten original).

The warden responded to Savage's request on June 30,
2021. His response reads, in relevant part:

> A review of records reveals that you have
> not submitted any requests for modification (for
> social contact) in several years — aside from
> two relatively recent requests to add an imam
> [2019] and a college [2020] as approved con-

7

tacts.[†]  A more expansive review of your current
SAM, and previous versions, reveals that your
SAM was modified in 2015 to allow communi-
cation between you and your niece and nephew.

You are encouraged to request modifica-
tions as appropriate, as the Bureau of Prisons
recognizes the importance of maintaining con-
tacts with the community.  Any request for
modification is to be initiated by you, using a
contact request form which is obtainable from
your unit's Special Investigative Services staff.
Once submitted, your request(s) will be for-
warded to and reviewed by the USAO/EDPA
and the FBI.  . . .

Additionally, section 501.3(e) specifies
that an inmate may seek review of any SAM re-
strictions through the [ARP]. . . .      Any
Administrative Remedies [*sic*] that specifically
challenge the terms of a SAM (including the de-
nial of a request for modification) are forwarded
to the appropriate United States Attorney's
Office and law enforcement monitor for review
and response.  These agencies may take action
as necessary to grant the relief requested, or in
the alternative they may affirm their original ac-

---

[†] Notwithstanding the warden's reference to the imam and
correspondence course as "social requests," the record indicates both
modifications were approved via routes other than the form used for
adding social contacts.  Although it apparently was the Justice
Department that approved these modifications, in each instance a
BoP Program Statement dealt specifically with an educational course
and a spiritual advisor.  In those circumstances, Savage did not need
to use the same form as he would need to use to add a social contact.

8

tion.  You would then be notified of the dispo-
sition via a BP-229 Response.

Accordingly, this response to your Request
for Administrative Remedy is for informational
purposes only.  In the event you are not satisfied
with this response and wish to appeal, you may
do so within 20 calendar days of the date of this
response by submitting a BP-230[] to the
Regional Director, Federal Bureau of Prisons,
North Central Regional Office. . . .

Savage did not appeal to the Regional Director, which
would have been step 3 in the ARP.  Nor had he waited for the
warden's response when he sued the Justice Department alleg-
ing the Department's "repeated, unexplained, perfunctory re-
jection of [his] annual requests to add individuals to his list of
approved SAMs contacts over the past decade violate [his]
rights" under the First Amendment and was arbitrary and ca-
pricious in violation of the Administrative Procedure Act.

The Department moved to dismiss Savage's suit for failure
to exhaust his administrative remedies, and submitted with its
motion the declaration of an employee of the BoP.  The declar-
ant stated that Savage had not "appeal[ed] the Warden's re-
sponse to the appropriate Regional Director or the Office of
General Counsel."

Pursuant to Federal Rule of Civil Procedure 12(d), the dis-
trict court converted the Department's motion to dismiss into a
motion for summary judgment, which it granted.  The court ob-
served that the ARP process holds out the possibility of "some
relief" coming from Savage's administrative complaint.  The
court therefore concluded that Savage was required by the
PLRA to exhaust the ARP process before he could sue the

9

Justice Department.  Finding that Savage had not done so, the court dismissed his suit without prejudice.

### III.     Standard of Review

Savage appeals from the district court's dismissal of his suit for failure to exhaust his administrative remedies as required by the PLRA.  Our review is *de novo*.  *See, e.g.*, *Lesesne v. Doe*, 712 F.3d 584, 587 (D.C. Cir. 2013).

### IV.     Analysis

The PLRA provides:

> No action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

Savage argues he has exhausted his administrative remedies because the ARP is not "available" to him.  For the purposes of the PLRA, a grievance procedure is "available" to a prisoner if it is "capable of use to obtain some relief for the action complained of."  *Ross v. Blake*, 578 U.S. 632, 642 (2016) (cleaned up).

The issue before us, therefore, is whether the administrative process, had Savage exhausted it, was capable of affording him "some relief" from the inaction of which he complains.  The answer is surely yes because it was the Department of Justice that issued Savage's SAMs and the ARP ends with review by the Department of Justice, which has the authority to

10

modify or to rescind the SAMs.  *See Booth v. Churner*, 532 U.S. 731, 736 n.4 (2001) (holding a grievance system offering only non-monetary relief was nonetheless "available" to a prisoner seeking only money damages because "the state grievance system . . . ha[d] authority to take some responsive action with respect to the type of allegations [the prisoner] raises."); *cf. also Kaemmerling v. Lappin*, 553 F.3d 669, 675–76 (D.C. Cir. 2008) (holding under the PLRA that a grievance process was "unavailable" to a federal prisoner challenging the collection of his DNA because federal law commanded the Bureau of Prisons to collect it).

As we have seen, Savage did file an ARP request with his warden, but he did not complete the ARP process by appealing the warden's decision to the Regional Director of the BoP and then, if not satisfied, to the General Counsel.  *See* 28 C.F.R. § 542.15.  Instead, Savage sued the Department before even receiving the warden's response.  Because Savage sued when he had not "complete[d] the administrative review process in accordance with the applicable procedural rules," *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)), the PLRA bars his suit.

In a last-ditch effort, Savage contends his lawyer's 2015 email corresponding with the assistant U.S. attorney handling his case is an administrative remedy, and by his attorney sending subsequent emails to no avail, he exhausted it.  Even accepting *arguendo* the doubtful premise in the preceding sentence, this contention cannot help Savage:  Supreme Court precedent makes clear that a prisoner must exhaust "all" remedies available to him, not merely one of them.  *See, e.g.*, *Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (stating that "exhaust[ing] all available remedies" is "mandatory under the [PLRA]").  This Savage did not do before filing this lawsuit.

11

For these reasons, we hold that Savage has neither exhausted the ARP process nor demonstrated that the ARP process is not "available" to him within the meaning of the PLRA. The PLRA therefore bars his lawsuit.

**V.     Conclusion**

The judgment of the district court is

*Affirmed*.